# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

IAN MILLER,

                    Petitioner,            :    Case No. 1:17-cv-536

      - vs -                            District Judge Susan J. Dlott
                                            Magistrate Judge Michael R. Merz

JEFFREY NOBLE, Warden,
  London Correctional Institution
                                      :
                    Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus action brought *pro se* by Petitioner Ian Miller under 28 U.S.C. § 2254 to obtain relief from his conviction in the Hamilton County Common Pleas Court for murder with a firearm specification (Petition, ECF No. 1, PageID 1). Upon conviction by a jury, he was sentenced to life imprisonment with parole eligibility at eighteen years. *Id.* Upon Order for Answer by Magistrate Judge Stephanie Bowman (ECF No. 2), Respondent has filed the State Court Record (ECF No. 4) and a Return of Writ (ECF No. 5). Petitioner then filed a Reply (ECF No. 9), making the case ripe for decision. The reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the Western Division of this Court (ECF No. 10).

**Procedural History**

The Hamilton County grand jury indicted Miller on two counts of murder, one in violation of Ohio Revised Code § 2903.02(A) (purposeful murder), and one in violation of Ohio Revised Code § 2903.02(B)(felony murder), each with a firearm specification. He was acquitted of purposeful murder but convicted of felony murder, and was sentenced as set forth above. He appealed to the First District Court of Appeals which affirmed the convictions. *State v. Miller*, Case No. C-140101 (1st Dist. May 22, 2015) (unreported; copy at State Court Record, ECF No. 4, PageID 77, et seq.), appellate jurisdiction declined, Ohio Sup. Ct. Case No. 2015-1108 (2015).

Miller filed an application to reopen his direct appeal to raise claims of ineffective assistance of appellate counsel. *Id.* at PageID 117. The First District denied the application on the merits. *Id.* at PageID 122, et seq. Miller was again unsuccessful at obtaining Supreme Court review. *Id.* at PageID 135.

Miller then filed his Petition in this Court, pleading the following Grounds for Relief:

> **Ground One**: I was deprived of my constitutional right to due process and to a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the U. S. Constitution by the application of Ohio's felony murder rule to this case.
>
> **Supporting Facts:** The Ohio felony murder rule as applied in this case deprived me of Due Process and Equal Protection. I was convicted under the theory that I committed a felonious assault and the victim died as a result. This permitted the State of Ohio to convict me of murder without providing a scintilla of evidence that I intended to kill my victim. Because I was convicted of Murder without any evidence of intent, my conviction violates Due Process and Equal Protection.
>
> **Ground Two**: I was denied due process and equal protection in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution because the Felony Murder statute and the involuntary manslaughter statute prohibit the same activity.

**Supporting Facts**: The Ohio Court of Appeals unreasonably failed to apply existing precedent on equal protection to the facts of this case.   Both Ohio's felony murder statute and its involuntary manslaughter prohibit identical activity, require identical proof, and yet imposed different penalties. The felony murder rule has no rational basis to any legitimate statutory objective and it treats similarly situated people differently and accordingly it violates the Equal Protection Clause of the Fourteenth Amendment.

**Ground Three**: There was insufficient evidence to sustain the conviction in this case and the conviction was against the manifest weight of the evidence.

**Supporting Facts:** My Due Process Rights were violated because the State of Ohio failed to present any evidence that I committed felonious assault.  Further, there was no evidence that I met the statutory requirements for felonious assault and because I failed to meet those requirements this offense could not be used as the predicate felony to invoke the felony murder rule.  Because the State failed to present proof beyond a reasonable doubt of each and every fact necessary to commit felonious assault, my conviction is a miscarriage of justice.

**Ground Four**: I received the ineffective assistance of appellate counsel for his failure to raise on appeal the ineffective assistance of trial counsel in violation of the Sixth Fourteenth Amendments to the U. S. Constitution.

**Supporting Facts**: Trial counsel was ineffective for failing to argue that the Defendant saw what appeared to be a gun in Marcus Lane's hand.  Evidence presented at trial indicated that the victim had a cell phone that the Defendant reasonably believed to be a firearm – evidence that a reasonably competent attorney would have emphasized in a self-defense case.  This incident also occurred on the 4th of July and the simultaneous sound of fireworks also influenced Petitioner's judgment and his reasonable belief that he was being confronted with a firearm.  Trial counsel was ineffective in failing to make these arguments to the jury and appellate counsel was ineffective in failing to present trial counsel's ineffectiveness on appeal.

(Petition, ECF No. 1, PageID 5, 6, 8, 9-10.)

# Analysis

**Ground One:  Unconstitutionality of the Felony Murder Rule**

In his First Ground for Relief, Miller argues that he was unconstitutionally convicted of murder under the felony murder rule which allowed the State to prove only the *mens rea* element of the underlying felony (felonious assault which requires that the offender have acted knowingly) instead of the *mens rea* – purposely -- required for a straight murder conviction (Traverse, ECF No. 9, PageID 1195)

Respondent defends on the merits, arguing that the First District interpreted the statutes in question in accordance with state law and found that Miller's conviction under the felony murder statute was not unconstitutional.

Miller presented this claim as his Third Assignment of Error on direct appeal which the First District decided as follows:

> In his third assignment of error, Miller argues that the state's use of felonious assault as the predicate felony for his felony-murder conviction violated his due-process rights as guaranteed by the Ohio and United States Constitutions.  But the legislature has "narrowly defined" the scope of the offense of felony murder and "related it to the legitimate purpose of punishing the taking of human life while committing a separate offense of violence."  *State v. Pickett*, 1st Dist. Hamilton No. C-000424, 2001 Ohio App. LEXIS 5549 (Dec. 14, 2001).  Moreover, the offense as statutorily defined "does not arbitrarily relieve the state from proving criminal intent, nor does it eliminate the role of the jury as the trier of fact." *Id*. And Miller has failed to cite any Ohio or federal case law that supports his argument that Ohio's failure to adopt a "merger doctrine" raises constitutional concerns.  See *State v. Mays*, 2d Dist. Montgomery No. 24168, 2012-Ohio-838, ¶¶12-13. Therefore, Miller's conviction under the felony-murder rule of R.C. 2903.02(B), where the predicate offense was the felonious assault of the murder victim, did not deprive him, of due process.  Thus, we overrule the third assignment of error.

*State v. Miller, supra,* (Judgment Entry of May 22, 2015, State Court Record, ECF No. 4, PageID 80-81.)

In his Traverse, Petitioner does not argue his First Ground for Relief as it was presented to the First District in his Third Assignment of Error. Instead he argues at some length that the trial court should have given jury instructions on the lesser included offense of voluntary manslaughter or involuntary manslaughter (Traverse, ECF No. 9, PageID 1194-99).

Examination of Miller's Brief on Appeal shows that he did not raise as an assignment of error the failure to the trial judge to charge on lesser included offenses (Appellant's Brief, State Court Record, ECF No. 4, PageID 40-62.) Because this claim was not presented to the Court of Appeals, Miller has forfeited his right to have it heard on the merits in habeas corpus.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Engle v. Isaac*, 456 U.S. 107, 110 (1982); *Wainwright v. Sykes*, 433 U.S. 72 (1977). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas

corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6ᵗʰ Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis of procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6ᵗʰ Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6ᵗʰ Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6ᵗʰ Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6ᵗʰ Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6ᵗʰ Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6ᵗʰ Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6ᵗʰ Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6ᵗʰ Cir. 2015).

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6ᵗʰ Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6ᵗʰ Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the

meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

Here the relevant Ohio procedural rules are that a defendant is entitled to only one direct appeal of right and the court of appeals decides only the assignments of error that are pleaded. Miller did not raise this claim about lesser included offense instructions on direct appeal. There is no doubt, however, that if he attempted to appeal again to raise this claim, he could not do so.

Because Miller's claim relating to failure to instruct the jury on lesser included offenses was never presented to the state courts, it is procedurally defaulted and should be dismissed.

Regarding the claim actually made in the Petition, which is the same claim made in the Third Assignment of Error on direct appeal, Miller has not argued that claim at all in his Traverse. Instead, he argues the lesser included offense instruction claim.

The claim actually made in the Petition was decided by the First District in the language quoted above. The First District made clear, albeit in summary fashion, that it was deciding the federal constitutional question presented in the Third Assignment.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Miller has not argued in any

way that the First District's decision on his Third Assignment of Error was an unreasonable application of clearly established Supreme Court precedent. For that reason as well, the First Ground for Relief should be dismissed with prejudice.

**Ground Two: Denial of Equal Protection**

In his Second Ground for Relief, Miller argues his convictions violate the Equal Protection Clause of the Fourteenth Amendment[1] because the felony murder statute and the involuntary manslaughter statute prohibit the same conduct.

This claim was presented to the First District on direct appeal as the Fifth Assignment of Error. That court decided

> In his fifth assignment of error, Miller argues that his conviction for felony murder under R.C. 2903.02(B), rather than involuntary manslaughter under R.C. 2903.04, denied him equal protection of the law, because the statutes prohibit identical conduct and require identical proof, but the felony-murder statute provides a greater penalty. See *State v. Wilson,* 58 Ohio St.2d 52, 66, 388 N.E.2d 745 (1979). But Miller has failed to demonstrate a constitutional violation because the statutes no not prohibit identical conduct and required identical proof. See *State v. Dixon*, 2d District Montgomery No. 18582, 2002 Ohio App. LEXIS 472 (Feb. 8, 2002); *accord State v. Ford*, 10th Dist. Franklin No. 07AP803, 2008-Ohio-4373, ¶29; *State v. Jones*, 8th Dist. Cuyahoga No. 80737, 2002-Ohio-6045, ¶ 133-135. Because the assignment of error is meritless, we overrule it.

*State v. Rice, supra*, at PageID 82.

---

[1] Miller also mentions the Fifth Amendment. That provision of the Constitution has no equal protection clause, but the Supreme Court has held that the Fifth Amendment protects persons from the same conduct when carried out by the federal government as the Equal Protection Clause of the Fourteenth Amendment prohibits States to carry out. *Bolling v. Sharpe*, 347 U.S. 497 (1954). The Fifth Amendment does not apply to this case because no federal actor was involved.

To prevail on habeas corpus, Miller must show that this decision is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). He concedes that the First District's interpretation of the Ohio statutes in question is binding on this Court, and that the First District decided that the felony murder and involuntary manslaughter statutes do not prohibit identical conduct and do not require identical proof (Traverse, ECF No. 9, PageID 1200). Nevertheless, he argues the First District's decision is an unreasonable application of *Jackson v. Virginia,* 443 U.S. 307 (1979), and *In re Winship*, 397 U.S. 358 (1970). *Id.* at PageID 1199-1200.

Those two cases hold that the Fourteenth Amendment Due Process of Law Clause requires a State to prove every element of a criminal charge by proof beyond a reasonable doubt. Although the States define the elements of crime, once they have done so, proof beyond a reasonable doubt is required as a matter of constitutional law.

Miller goes on to argue that an Ohio court has held that involuntary manslaughter is a lesser included offense of murder under the relevant facts. (Traverse, ECF No. 9, PageID 1200, citing *State v. Carter*, 1983 Ohio App. LEXIS 13290 (2nd Dist. Oct. 14, 1983). In that case, the defendant had been charged with murder in violation of Ohio Revised Code § 2903.02(A) and the trial court dismissed that charge at the conclusion of the State's evidence, but, contrary to defendant's argument, allowed the trial to proceed on the lesser included offense of involuntary manslaughter.

*Carter* is not relevant here where Petitioner was acquitted of the § 2903.02(A) charge altogether. Carter does not hold that involuntary manslaughter is a lesser included offense of felony murder. Neither *Jackson v. Virginia* nor *In re Winship* requires a trial judge on his or her own initiative to determine whether a lesser included offense conviction is warranted. And in any event, no such claim was submitted to the First District on direct appeal.

Miller correctly cites *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990), for the proposition there is no constitutional requirement to give a lesser included offense instruction in a non-capital case. *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001), is more recent authority to the same effect. But, says Miller, this is no ordinary failure to instruct on a lesser included offense because "the Trial Court failed in its duty to make a reasonable view of the evidence in light most favorable to the Petitioner." No such duty is imposed by the United States Constitution. To the extent Miller is relying on Jackson, supra, he has the standard upside down; in applying Jackson a court must view the evidence in the light most favorable to the State.

Petitioner's Second Ground for Relief is without merit and, to the extent it constitutes a claim of failure to instruct on a lesser included offense, is also barred by procedural default. Ground Two should therefore be dismissed with prejudice.

**Ground Three: Insufficient Evidence of Felonious Assault**

In his Third Ground for Relief, Miller asserts there was insufficient evidence to convict him of felonious assault and that his conviction on that underlying charge was against the manifest weight of the evidence.

A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). That is to say, a conviction against the manifest weight of the evidence does not violate the United States Constitution. Therefore, this part of Ground Three will not be further analyzed.

However, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-

evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given first to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S.766, 773, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012) (per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).

On direct appeal, Miller raised only a manifest weight assignment of error (Appellant's

Brief, State Court Record, ECF No. 4, PageID 64). Respondent asserts a procedural default defense to this Ground for Relief, noting that it was not raised on direct appeal. Miller admits as much, but claims he can show excusing cause and prejudice because it was ineffective assistance of appellate counsel to fail to make this claim (Traverse, ECF No. 9, PageID 1204-05). Ineffective assistance of appellate counsel can act to excuse failure to raise a claim on direct appeal. However, before that excuse can be heard, the ineffective assistance of appellate counsel claim must itself be presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000). When he filed his Application to Reopen the Direct Appeal under Ohio R. App. P. 26(B), he did not claim it was ineffective assistance of appellate counsel to fail to raise the insufficient evidence claim (Application for Reopening, State Court Record, ECF No. 4, PageID 117-18). Respondent's procedural default defense on this Ground for Relief is well taken.

Alternatively, this Ground for Relief fails on the merits.

A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin*, No. 06-4059, 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011) (White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011) (Merz, M.J.). This is because it takes less evidence to satisfy the *Jackson v. Virginia*, 443 U.S. 307 (1979), test than to show the manifest weight of the evidence was against the verdict. To obtain habeas corpus relief on this claim, therefore, Miller must show that the First District's decision is contrary to or an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts on the basis of the evidence presented.

On direct appeal, the First District found the following to be the relevant facts:

[P3] Miller had a child with Victoria Ellis in 2011. The couple broke up soon after and Ellis starting dating [Marcus] Lane. Miller and Lane often argued with each other, and Miller was uncomfortable around Lane, whom he had learned had prior convictions for carrying a concealed weapon. Miller had obtained a concealed-carry permit for a firearm in 2006 and had carried a loaded weapon with him since that time.

[P4] On the evening of July 4, 2012, Miller had arranged to meet Ellis so that he could exchange their daughter and her diaper bag. Lane drove Ellis to this meeting, which occurred near the neighborhood where Ellis and Lane resided. After the exchange took place, Miller discovered that the keys to his truck were missing. He immediately accused Lane of taking them, and called the police to report the theft. Lane and Ellis had driven away, but returned to after [sic] Ellis had found the keys in the diaper bag.

[P5] Upon their return, Lane pulled the car alongside Miller's truck, where Miller stood outside of, but near, the opened driver's side door. Lane threw the keys toward the truck, and Miller recovered them. Miller made a derogatory statement about Lane's mother, which upset Lane and caused him to get out of the car, despite Ellis's attempt to stop him. Lane walked around the back of Ellis's car, where, according to Ellis, he remained as he argued with Miller. Moments later, Miller repeatedly shot Lane and sped away in his truck. Ellis saw Lane running away from Miller after she heard the first shot.

[P6] According to Miller, before he shot Lane, Lane had shouted, 'Victoria tell me you carry a gun; I got hammers, too, what you want to do," while he was reaching towards his waistband. Although Miller had the keys to his truck, he could not get into his truck without turning his back on Lane, whom he claimed was charging him and was only three feet away from when he [Miller] fired the first shot, and half that distance when he fired the second. Miller claimed that Lane then turned away, and that he [Miller] did not remember firing the other three shots.

[P7] Miller testified that he had feared for his life and that he did not believe that he could escape without shooting Lane. He claimed that he had never intended to kill Lane.

[P8] The forensic and medical evidence demonstrated that Lane was fatally shot four times in the back with Miller's gun, and that none of the wounds were inflicted at a distance of less than two feet. The

> police did not recover any evidence indicating that Lane had had a
> gun, and Miller admitted that he never saw Lane with a weapon.

(Judgment Entry of May 22, 2015, State Court Record, ECF No. 4, PageID 77-79.)

In arguing this Ground for Relief in his Traverse, Miller does not contend that these factual findings by the First District are not supported by the evidence or that, accepted by this Court as true, they do not constitute sufficient evidence of felonious assault:  shooting a man four times in the back is certainly enough to show felonious assault.

Instead, Miller argues that the trial court impermissibly allowed the State to present evidence to support a premeditated murder charge and also other bad acts evidence.  These two claims are procedurally defaulted because they were never raised on direct appeal (See Appellant's Brief, State Court Record, ECF No. 4, PageID 40, et seq.)

Miller then makes a two-page argument about a claimed violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) (Traverse, ECF No. 9, PageID 1206-08).  This claim is also procedurally defaulted because it was not raised on direct appeal (See Appellant's Brief, State Court Record, ECF No. 4, PageID 40, et seq.).

The claims Miller makes in his Third Ground for Relief are procedurally defaulted.  In the alternative, his insufficiency of the evidence claim is without merit because the facts found by the First District are plainly sufficient to support a conviction for felonious assault.  Ground Three should be dismissed with prejudice.


**Ground Four:  Ineffective Assistance of Appellate Counsel**


In his Fourth Ground for Relief, Miller asserts he received ineffective assistance of appellate counsel when his appellate attorney failed to argue his trial attorney provided ineffective

assistance for failing to argue that (1) Miller saw what appeared to be a gun in the victim's hand and (2) the incident occurred on the Fourth of July "and the simultaneous sound of fireworks also influenced Petitioner's judgment and his reasonable belief that he was being confronted with a firearm."

Miller raised this claim as his first omitted assignment of error in his Rule 26(B) Application (State Court Record, ECF No. 4, PageID 117). The First District decided the claim as follows:

> Appellate counsel was not ineffective in failing to assign as error trial counsel's alleged ineffectiveness in failing to argue in support of Miller's self-defense claim that he had reasonably believed that the victim had shot at him first, when amid the noise of July 4th fireworks, the victim stated that he had a gun and reached toward the waistband of his pants. Appellate counsel presented an assignment of error challenging the weight of the evidence supporting Miller's felony-murder conviction and argued in support of that assignment of error that Miller had proved his self-defense claim. We overruled the assignment of error based upon our review of the evidence adduced at trial. That evidence included Miller's testimony that he had shot the victim because his threatening statements and conduct had caused Miller to believe that the victim had a gun. And trial counsel advanced that theory in support of Miller's self-defense claim. But Miller did not testify, and thus trial counsel could not have argued, that the sound of fireworks had caused Miller to believe that the victim had shot at him first. Thus, the record does not demonstrate a reasonable probability that, but for trial counsel's alleged deficiencies in advancing Miller's self-defense claim, the result of his trial would have been different. See *Strickland* at 694; *Bradley* at paragraph three of the syllabus.

(Entry Denying Application for Reopening, State Court Record, ECF No. 4, PageID 123.)

To prevail on his Fourth Ground for Relief, Miller must show that this decision of the First District was contrary to or any objectively unreasonable application of Supreme Court precedent. In making its decision, the First District cited *Strickland [v. Washington]* and *[State v.] Bradley,*

42 Ohio St. 3d 136 (1989). *Bradley* is the case in which the Ohio Supreme Court recognized the *Strickland* standard as governing ineffective assistance of trial counsel claims.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). See generally Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.*

Miller makes no argument in his Traverse as to why this decision is an unreasonable application of *Strickland*. The Magistrate Judge concludes it was completely reasonable. It would not have helped Miller's cause to have appellate counsel complain of a supposedly omitted argument that was, in fact, not omitted. And the second omitted argument was one that could not have properly been made because Miller did not testify about reacting to fireworks.

Instead of attempting to show the First District was unreasonable in its application of Strickland, Miller spend most of his Traverse arguing about claims that were never made in the state courts. First of all, he argues his trial attorney provided ineffective assistance by his decision

"to set forth an Affirmative Defense of Self Defense in a murder case" when counsel had not conducted "a pre-trial interview of Victoria Ellis and Ava Pye. . . ." (ECF No. 9, PageID 1210). But that is not the ineffective assistance of trial counsel claim Miller accused his appellate attorney of omitting. There is no proof in the record, or at least Miller cites no such proof, that his trial attorney did not interview these witnesses. To the extent such proof would involve evidence not of record on appeal, it would have had to be brought to the trial court's attention by a petition for post-conviction relief claiming ineffective assistance of trial counsel, but no such petition was ever filed and the time for doing so has expired.

Miller hypothesizes that without Ellis's and Pye's testimony, the outcome of the trial would have been different (Traverse, ECF No. 9, PageID 1211). But he offers no theory or proof as to how a pre-trial interview of these witnesses would have prevented them from testifying as they did. He cites trial testimony that the jury heard and that he claims is conflicting (Traverse, ECF No. 9, PageID 1212-13), but no basis on which his trial attorney could have prevented the jury from believing what they decided to believe out of the conflicting testimony.

Miller argues that State effectively amended the indictment by arguing its premeditated murder theory, but no premediated murder claim was submitted to the jury, just purposeful murder and felony murder. He claims effective counsel would have filed a motion *in limine* to preclude the premeditated murder and other bad acts evidence (Traverse, ECF No. 9, PageID 1214). But he never presented this claim to the Ohio courts in a post-conviction petition; nor did he include it as an omitted assignment of error in his 26(B) application. The same thing is true of Miller's claim he received ineffective assistance of trial counsel because his attorney did not visit the crime scene. *Id.* at PageID 1215.

In fact, most of the remainder of Miller's Traverse consists of arguments about how trial

counsel was ineffective (ECF No. 9, PageID 1212-26). None of these claims has ever been presented to the Ohio courts, and they are procedurally defaulted on that basis. Miller concludes his Traverse by arguing four additional ways that his appellate counsel allegedly provided ineffective assistance of appellate counsel (Traverse, ECF No. 9, PageID 1226). But these claims also have never been presented to the Ohio courts.

Miller's Fourth Ground for Relief as pleaded in the Petition should be denied on the merits, because the First District's 26(B) decision was not an unreasonable application of *Strickland*. The new claims of ineffective assistance of trial counsel Miller raises in his Traverse should be dismissed as procedurally defaulted, because they were never presented to the state courts.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition in this case be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 15, 2018.

s/ *Michael R. Merz*<br>
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).